**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **QUINCY WHITTINGTON;** | § | |
| **HENRY M. JOHNSON,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-06-0011** |
| | § | |
| **CITY OF CUERO, TEXAS,** *et al.* | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is the City of Cuero's ("City") motion to dismiss for failure to state a claim. (Dkt #20-1).  The Court, after reviewing the motion, the responses by the parties and the relevant law, is of the opinion that the motion should be GRANTED in part and DENIED in part for the reasons set forth below.  Also pending are Defendants' Motion to Sever (Dkt. #16-1) and City of Cuero's Motion to Sever Claims (Dkt. #19-1).  The Court is of the opinion that both motions to sever should be GRANTED.

**Factual Background**

Two distinct sets of facts are presented in Plaintiffs' Second Amended Complaint.  (Dkt. #34).  One set of facts relates to Plaintiff Quincy Whittington ("Whittington") and one set of facts relates to Plaintiff Henry M. Johnson ("Johnson").  The Court will describe each set of facts in turn.  The facts below are presented in the light most favorable to the Plaintiffs.

I.    *Quincy Whittington*

1

On February 2, 2005, Patrol Sergeant Steven Ellis ("Sergeant Ellis")[1] unlawfully stopped Arthur Whittington ("Arthur"), Quincy Whittington's brother, for an alleged traffic violation. Subsequent to the stop, Arthur traveled to Whittington's home. Sergeant Ellis pursued Arthur to that location. Upon arrival, Sergeant Ellis began to take action without waiting for backup. It is unclear from the face of the Second Amended Complaint precisely what Sergeant Ellis did during this period. At some point after Sergeant Ellis' arrival, several additional officers arrived at Whittington's home. Among these officers were Deputy Michael Browning ("Deputy Browning") of the DeWitt County Sheriff's Department and Officer Kenneth McCarthy ("Officer McCarthy") of the City of Cuero Police Department.

During the same evening, Plaintiff Whittington became aware of what was happening outside of his home. Whittington walked over to the area where the officers where interacting with Arthur. Whittington then attempted to aid the officers in subduing Arthur.

At approximately 11 P.M. that evening, Deputy Browning shot Whittington with an X-26 taser gun ("taser"). Deputy Browning was directed to employ the taser by Officer McCarthy. The initial shot from the taser gun and the accompanying shock caused Whittington to fall to the ground and shake violently. Deputy Browning later administered a second shock while the prongs from the taser gun were still attached to Whittington's back. The second shock also caused Whittington to shake violently. Whittington was then handcuffed and transported to jail. Each of these events occurred in the plain view of Whittington's family members, including his son.

---

[1] The Second Amended Complaint (Dkt. #34) does not provide adequate information to determine the identity of Sergeant Ellis' employer.

2

At the time of the incident, Whittington suffered from a serious heart condition that rendered him disabled.  This heart condition was widely known throughout the community.  Furthermore, Whittington wore an ice pack on his back to alleviate pain from a back injury.  Whittington was shot by Deputy Browning's taser in an area close to where his ice pack was positioned.

Whittington claims that because of the events described above he has suffered "serious personal injuries, which include flesh wounds, abrasions, bruises, muscle strains and heart problems, as well as severe mental distress and depression that required and continue to require professional counseling and treatment."  (Dkt. #34 at 5).  Whittington, of his own volition, has obtained medical care and treatment.

## II.     *Henry M. Johnson*

On October 9, 2004, during Turkeyfest weekend,[2] Cuero Police Officer Corey Tolbert ("Officer Tolbert") pursued Albert Johnson ("Albert"), Henry Johnson's brother, to "a home on Togo in Cuero where Henry Johnson was located."  (Dkt. #34 at 5).  Albert Johnson had allegedly been spinning the tires of his vehicle.  Upon Officer Tolbert's arrival to the home, he

---

[2] Turkeyfest is described as follows:

> A full South Texas spectra of turkey based food recipes, carnivals, gala parades, free mall areas in the downtown streets, continuous live entertainment, home tours, street dances, arts and crafts, in additions [sic] to a "herd" of wild turkeys parading down the streets all climaxed with the "Great Gobbler Gallop."  The final event is an annual turkey race between the cities of Worthington, Minnesota and Cuero.

Cuero Turkeyfest history, http://www.turkeyfest.org/history.shtml (last visited Mar.19, 2007).

"drew his duty weapon"[3] while approaching Albert Johnson's vehicle.  At the same time, Officer Tolbert instructed Albert to put his hands in the air and to get out of his vehicle.

During the events described above, Plaintiff Johnson became aware of the encounter between Officer Tolbert and Albert.  When Johnson saw Officer Tolbert with his ASP baton out, he feared that Albert would become injured.  Johnson then told Officer Tolbert that he would help him apprehend Albert.  Johnson proceeded to restrain Albert in a "bear hug" while Officer Tolbert placed handcuffs on him.[4]  Johnson further directed Albert to be quiet and to do as he was told.  After Albert was placed in handcuffs, the situation "de-escalated."

While Johnson was still present at the scene, approximately 12 officers arrived to assist Officer Tolbert.  Among these officers were Officer McCarthy of the City of Cuero Police Department and Deputy Gary "Duke" Edwards ("Deputy Edwards") of the DeWitt County Sheriff's Department.  Immediately upon arriving at the scene, Deputy Edwards "decided to take physical action against Henry Johnson."  (Dkt. #34 at 6).  As Johnson turned and walked away, Deputy Edwards pulled out his flashlight and struck Johnson on the head.  The blow caused Johnson to fall to the ground.  Officer McCarthy and several Cuero Police Department Officers then beat Johnson, rendering him unconscious.  Each of these events occurred in the plain view of Johnson's family members.

After Johnson became injured, Cuero Officer Santos Calderon ("Officer Calderon") put

---

[3] It is unclear whether "duty weapon" refers to a traditional firearm or to an "ASP baton," which is specifically referenced in the complaint.  (Dkt. #34 at 6).

[4] Officer Tolbert's report reflects that Johnson told him that he wished to help subdue Albert.  (Dkt. #34 at 6).  The report further reflects that Johnson restrained Albert in a "bear hug."  (Dkt. #34 at 6).

Johnson in his squad car and drove him to a hospital.  During the trip, Officer Calderon observed

a significant amount of blood on Johnson's head and clothes.[5]  Officer Calderon also observed

that Johnson sunk down in his seat and became silent.  Officer Calderon then stopped his

vehicle, opened its back door, and shook Johnson for a reaction.  Johnson responded by stating

that he was "hurting bad."  (Dkt. #34 at 7).  When Johnson and Officer Calderon arrived at the

emergency room of the hospital, a wheelchair was used to move Johnson.  Also, while in the

hospital three photographs were taken of Johnson.  Once Johnson received treatment, Officer

Calderon transported him to jail.

As a result of the events described above, Johnson suffered "severe [personal] injuries

which [include] flesh wounds, lacerations, [a] dislocated shoulder, bruises, abrasions, muscle

strain and scarring, as well as emotional distress."  (Dkt. #34 at 7).  Johnson required medical

treatment at Cuero Community Hospital.  Johnson's head wound required 15 stitches.

## Standard of Review

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a

claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).  Motions to dismiss for

failure to state a claim are viewed with disfavor and rarely granted.  *Doss v. South Cent. Bell Tel.

Co.*, 834 F.2d 421, 424 (5th Cir. 1987) (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale

Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982).  The function of a complaint under the

Federal Rules is to give the defendant fair notice of plaintiff's claim and the grounds upon which

plaintiff relies.  *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80

(1957)).  When presented with a Rule 12(b)(6) motion to dismiss, the district court must examine

---

[5] These observations are reflected in Officer Calderon's statement.  (Dkt. #34 at 6).

the complaint to determine if the allegations provide for relief on any possible theory.  *Id.*

When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in its favor.  *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991).  The court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir.1991)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bonner v. Henderson*, 147 F.3d 457, 459 (5th Cir. 1998) (quoting *Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994) (citation omitted)).

## Discussion

### I.     *City of Cuero's Motion to Dismiss Claims*

Defendant City has moved to dismiss Plaintiffs' state and federal claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, the City argues that: (1) Plaintiffs fail to allege facts which state an actionable claim against the City; (2) Plaintiffs fail to state an actionable claim of unconstitutional conduct; and (3) Plaintiffs' claims against the City under State law fail.  Plaintiffs maintain that the operative complaint states numerous causes of action and comports with notice pleading requirements.  The Court will address each of Defendant City's arguments in turn.

A.  *Plaintiffs' Fail to Allege Facts Which State an Actionable Claim Against the City*

The City asserts that Plaintiffs have failed to plead specific facts supporting their claim of municipal liability under 42 U.S.C. § 1983.  Plaintiffs maintain that the facts as pled in the Second Amended Complaint are sufficient to state a cause of action for municipal liability. Plaintiffs stress that because the present motion to dismiss was filed before the completion of discovery, it is improper to prematurely address such factual concerns before summary judgment.

To state a claim against a municipality under section 1983, a plaintiff must allege that "1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred [by a person acting under the color of state law]; and 4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996)(citing *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987)).  Furthermore, a plaintiff must allege that a given policy was either nonexistent or inadequate and that it was adopted with deliberate indifference to the constitutional rights of citizens.  *City of Canton v. Harris*, 489 U.S. 378, 387-91 (1989).  To state a claim in "failure to train" cases, a plaintiff must allege that a constitutional violation is a highly predictable consequence of that failure.  *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 409 (1997).

The Supreme Court has expressly prohibited the application of a heightened pleading standard to section 1983 claims against municipal defendants.  *Leatherman*, 507 U.S. at 168. Instead, a plaintiff need only comply with notice pleading requirements by presenting a "short and plain statement of the claims showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2). "Boilerplate" allegations of inadequate municipal policies or customs are generally sufficient. *See Jacobs v. Port Neches Police Dept.*, No. 1:94-CV-767, 1996 WL 363023, *13-15 (E.D. Tex. June 26, 1996)(citations omitted).

In the case at bar, Plaintiffs sufficiently allege the requirements for municipal liability. Plaintiffs allege that: (1) an inadequate municipal policy or custom existed (Dkt. #34 at 14-15); (2) a necessary municipal policy or custom failed to exist (Dkt. #34 at 14-15); (3) governmental policy makers actually or constructively knew of the existence of inadequate policies or customs (Dkt. #34 at 14-15); (4) several constitutional violations occurred (section B, *infra)*; (5) the constitutional violations in question were committed by persons acting under the color of state law (Dkt. #34 at 14); (6) the municipal customs or policies in question were the moving force behind the constitutional violations.[6]  (Dkt. #34 at 14-15); (7) inadequate municipal polices or customs were adopted with deliberate indifference to the rights of citizens (Dkt. #34 at 14); and (8) constitutional violations were highly predictable consequences of the inadequate policies or customs in question.  (Dkt. #34 at 15).  Defendants allegations, while not being a model of clarity or organization, nonetheless sufficiently allege inadequate municipal policies and customs.  Therefore, the Court finds that Plaintiffs' allegations pertaining to municipal policy and custom are sufficient and do not warrant dismissal of their municipal section 1983 claims.

B.     *Plaintiffs' Failure to State an Actionable Claim of Unconstitutional Conduct*

The City maintains that Johnson has failed to plead actionable civil rights claims under

---

[6] While Plaintiffs have alleged that inadequate municipal policies were a "motivating force behind the incidents in question" rather than a "moving force," the Court finds that the facts pled within the Second Amended Complaint sufficiently allege that any constitutional violations were the "moving force" behind the violations.  Nonetheless, the Court grants Plaintiffs leave to amend their complaint to correct this detail.

42 U.S.C. § 1983 because he has failed to adequately plead constitutional violations.  Johnson

has pled an array of constitutional bases for his § 1983 claims.  The Court will address each of

these bases in turn.  Rulings made as to Whittington or Johnson will be stated and analyzed

separately.

1.      *First Amendment*

        The First Amendment protects a significant amount of verbal criticism and challenge

directed at police officers.  *City of Houston, Texas v. Hill*, 107 U.S. 451, 461 (1987).

Furthermore, the First Amendment protects the freedom of association in two general contexts:

(1) the freedom to enter and maintain certain intimate human relationships (*e.g.*, marriage,

begetting and bearing children, child rearing and education, and living with relatives); and (2)

the freedom to associate for the purpose of certain expressive activities.  *Wallace v. Texas Tech

Univ.*, 80 F.3d 1042, 1051-52 (5th Cir. 1996) (citing *Roberts v. United States Jaycees*, 468 U.S.

609 (1984)).  However, the Constitution does not include a "generalized right of 'social

association.'" *Id.* (citing *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989)).  To state a claim

under the First Amendment, a plaintiff must allege that: (1) the defendant was acting under color

of state law; (2) the plaintiff's activities were protected under the First Amendment; and (3) the

plaintiff's exercise of the protected right was a substantial and motivating factor for the

defendant's action.  *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996).

        *(a) Whittington*

        Whittington's allegations fail to state a claim under the First Amendment.  Whittington

wholly fails to allege that any protected speech or association was a substantial and motivating

factor as to Defendants' actions.  Whittington's allegations also fail to notify Defendants of

9

which speech or association Whittington believes is the basis for his First Amendment claim.

Accordingly, the City's motion to dismiss as to Whittington's First Amendment claim is

GRANTED without prejudice.  Whittington shall have 10 days to file an amended complaint

containing sufficient specific allegations to state a claim under the First Amendment.

### (b) Johnson

Johnson's allegations fail to state a claim under the First Amendment.  Johnson wholly

fails to allege that any protected speech or association was a substantial and motivating factor as

to Defendants' actions.  To the contrary, Johnson's allegations state that the decision to injure

him was made immediately upon the arrival of Deputy Edwards.  (Dkt. #34 at 16).  Johnson's

allegations also fail to notify Defendants of which speech or association Johnson believes is the

basis for his First Amendment claim.  Accordingly, the City's motion to dismiss as to Johnson's

First Amendment claim is GRANTED without prejudice.  Johnson shall have 10 days to file an

amended complaint containing sufficient specific allegations to state a claim under the First

Amendment.

### 2.    Fourth Amendment

### a.    Excessive Force

All "claims that law enforcement officers have used excessive force –deadly or not– in

the course of an arrest, investigatory stop, or other 'seizure'" should be analyzed under the

Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "A 'seizure' triggering the

Fourth Amendment's protections occurs only when government actors have, 'by means of

physical force or show of authority' ... in some way restrained the liberty of a citizen."  *Id.* at 396

n. 10.  (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)).  To state a Fourth Amendment

excessive force claim under § 1983, a plaintiff must allege (1) some injury; (2) which resulted

directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness was objectively unreasonable. *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993).

### (1) Whittington

Whittington's allegations sufficiently state a claim for excessive force under the Fourth Amendment. Whittington states a "seizure" by alleging that he was subdued by force and taken to jail. (Dkt. #34 at 4). "Some injury" is alleged by Whittington's claims that he "suffered severe personal injuries, which include flesh wounds, abrasions, bruises, muscle strain and heart problems, as well as severe mental distress and depression that required and continue to require professional counseling and treatment." (Dkt. #34 at 5). Whittington further alleges that his injuries directly resulted from being shot by a taser gun. Whittington's allegations of use of force sufficiently state that they are "clearly excessive to the need" because Whittington has pled that he merely assisted law enforcement and did not pose a threat. Lastly, the Court finds sufficient allegations stating that the "excessiveness was objectively unreasonable" for the same reasons. Therefore, the City's motion to dismiss as to Whittington's Fourth Amendment excessive force claim is DENIED.

### (2) Johnson

Johnson's allegations also sufficiently state an excessive force claim under the Fourth Amendment. Johnson's allegations describe a "seizure" by claiming that Johnson was subdued by the use of force and then taken to the hospital and jail. (Dkt. #34 at 6-7). Johnson alleges "some injury" by claiming that excessive force caused "severe personal injuries [including] flesh wounds, lacerations, [a] dislocated shoulder, bruises, abrasions, muscle strain and scarring, as well as sever emotional distress." (Dkt. #34 at 7). Johnson sufficiently alleges direct injury

from force "clearly excessive to the need" by claiming that: (1) he only assisted police officers (Dkt. #34 at 5-6); (2) he did nothing wrong (Dkt. #34 at 9); (3) a DeWitt County Deputy struck him over the head with a flashlight (Dkt. #34 at 6); and (4) several law enforcement personnel restrained and beat him (Dkt #34 at 6).  The Court further finds that because Johnson alleges that he was nonviolent and nonthreatening, his allegations sufficiently state that the excessiveness of the force used was objectively unreasonable.  Therefore, the motion to dismiss Johnson's Fourth Amendment Claim is DENIED.

      *b.*     *Improper Arrest/False Arrest*

Under the Fourth Amendment, an arrest must be based on probable cause, which exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."  *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 165 (5th Cir. 1997) (citing *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996)).  An individual's right to be free from unlawful arrest is s federally protected right that may constitute grounds for a suit under § 1983.  *Dennis v. Warren*, 779 F.2d 245, 247-48 (5th Cir. 1985).

      *(1) Whittington*

Whittington's allegations are sufficient to state a claim for improper arrest.  According to Whittington, he only attempted to help police officers (Dkt. #34 at 3-4) and did nothing wrong (Dkt. #34 at 9).  Whittington's allegations, if proven, may show that no reasonable person could conclude that Whittington had committed or was committing an offense.  Accordingly, the City's motion to dismiss Whittington's improper arrest claim is DENIED.

      *(2) Johnson*

Johnson's allegations are sufficient to state a claim for improper arrest.  According to

Johnson, he only attempted to help law enforcement officers arrest his brother Albert (Dkt. #34 at 5-6) and did nothing wrong (Dkt. #34 at 9).  Johnson's allegations, if proven, may show that no reasonable person could conclude that Johnson had committed or was committing an offense. Accordingly, the City's motion to dismiss Johnson's improper arrest claim is DENIED.

      *c.*     *Unreasonable Seizure*

The Fifth Circuit has recognized a constitutional violation based on an "unreasonable seizure." *E.g, Glenn v. City of Tyler*, 242 F.3d 307, 313-14 (5th Cir. 2001).   This claim may be asserted against unreasonable seizures implicated during an arrest.  *Id.* (citing *Valencia v. Wiggins,* 981 F.2d 1440, 1444 (5th Cir. 1993)). When probable cause to arrest exists, generally "the government's interests in enforcing its laws outweigh the suspect's privacy interest and arrest of the suspect is reasonable" under the Fourth Amendment.  *Atwater v. City of Lago*, 195 F.3d 242, 244 (5th Cir. 1999). This principle is deviated from "only when an arrest is 'conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests.'"  *Id.* (quoting *Whren v. United States*, 517 U.S. 806, 817 (1996)).  The balancing test utilized in the unreasonable seizure inquiry has been performed by the Supreme Court in the context of: (1) a search or seizure involving deadly force; (2) an unannounced entry into the home; (3) entry into a home without a warrant; and (3) physical penetration of the body.  *Glenn*, 242 F.3d at 314 (citing *Atwater*, 195 F.3d at 244).

      *(1) Whittington*

Whittington's unreasonable seizure claim fails because it merely restates his excessive force and improper arrest claims.  Whittington bases his claim on allegations identical to those relied upon for his excessive force and improper arrest claims.  When an unreasonable seizure claim is indistinguishable from a traditional excessive force or improper arrest claim, it should be

dismissed.  *Flores v. City of Palacios*, 381 F.3d 391, 403 (5th Cir. 2004).  Accordingly, the City's

motion to dismiss Whittington's unreasonable seizure claim is GRANTED with prejudice.

> *(2) Johnson*

Johnson's unreasonable seizure claim fails for the same reason that Whittington's claim

fails: it merely restates his excessive force and improper arrest claims.  Johnson's unreasonable

seizure claim is based on allegations identical to those relied upon for his excessive force and

improper arrest claims.  Accordingly, the City's motion to dismiss Johnson's unreasonable

seizure claim is GRANTED with prejudice.

> d.      *False Imprisonment*

The Fifth Circuit has recognized a cause of action under 42 U.S.C. § 1983 for false

imprisonment.  *Harper v. Merckle*, 638 F.2d 848, 860 (5th Cir. Unit B March 1981).  "To state a

claim for false imprisonment, plaintiffs must allege (1) an 'intent to confine, (2) acts resulting in

confinement, and (3) consciousness of the victim of confinement or resulting harm.'" *Jackson v.

Byrnes*, No. 3:05-CV-1269-K, 2006 WL 2037944, *2 (N.D. Tex. July 18, 2006)(citing *Harper*,

638 F.2d at 860).  In addition to the traditional elements of false imprisonment described above, a

plaintiff asserting a false imprisonment claim under 42 U.S.C. § 1983 must allege the deprivation

of a constitutional right caused by the false imprisonment.  *Harper*, 638 F.2d at 860.  Allegations

of arrest without probable cause are sufficient to establish this final requirement.  *Haggerty v.

Texas Southern University*, 391 F.3d 653, 655-56 (5th Cir. 2004).

> *(1) Whittington*

Whittington's allegations are sufficient to state a cause of action for false imprisonment.

Whittington was arrested and taken to jail while conscious and aware of his captivity.  (Dkt. #34

at 4).  Furthermore, Whittington has sufficiently alleged that he was arrested without probable

cause as described in section (I)(B)(2)(b)(1), *supra*.  Accordingly, the City's motion to dismiss as to Whittington's false imprisonment claim is DENIED.

> ### (2) Johnson

Johnson's allegations are sufficient to state a cause of action for false imprisonment. Johnson has alleged that he was arrested, confined in a car, confined in a hospital and taken to jail.  It is alleged that each of these events occurred while Johnson was conscious and aware of his captivity.  Lastly, Johnson has also sufficiently alleged that he was arrested without probable cause as described in section (I)(B)(2)(b)(2), *supra*.  Accordingly, the City's motion to dismiss as to Johnson's false imprisonment claim is DENIED.

## 2.    Fourteenth Amendment

### a.    Due Process

Plaintiffs maintain that their § 1983 claims should be analyzed under the Due Process Clause of the Fourteenth Amendment.[7]  The Due Process Clause protects against an "exercise of power without any reasonable justification in the service of a legitimate governmental objective" and "government power arbitrarily and oppressively exercised."  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)(citations omitted).  The Supreme Court has recognized that under certain circumstances the constitutional rights of a pretrial detainee flow from "the procedural and due process guarantees of the Fourteenth Amendment."  *Hare*, 74 F.3d at 639 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).  A pretrial detainee's due process rights are said to be "'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  *Hare*, 74 F.3d at

---

[7] The Court recognizes that several provisions of the Bill of Rights have been rendered applicable to the States via the Fourteenth Amendment.  The incorporation of the Bill of Rights is not considered in this section.

639 (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  The Fifth

Circuit, in *Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993), provided factors to consider when

determining whether an individual is or is not a pretrial detainee.  A Court should consider: (1)

whether the incidents of arrest are completed; (2) whether the plaintiff has been released from the

arresting officer's custody; (3) whether the plaintiff has been in detention awaiting trial for a

significant amount of time; and (4) whether the complained of conduct arises from the initial act

of restraining an individual's liberty.  *Id.* at 1443-44.

However, where a particular amendment provides an explicit textual source of

constitutional protection against a particular type of government conduct, that amendment and not

the more generalized notion of substantive due process should guide the analysis.  *Lewis*, 523

U.S. at 842.  Therefore, claims related to pretrial deprivations of liberty must be analyzed under

the Fourth Amendment.  *Albright v. Oliver*, 510 U.S. 266, 274 (1994).  Similarly, claims of

excessive force and false arrest must also be analyzed under the Fourth Amendment.  *Graham*,

490 U.S. at 395.

 *(1) Whittington*

Whittington does not state any claims under the Due Process Clause of the Fourteenth

Amendment.  Whittington's claims for excessive force and false arrest must be analyzed under

the Fourth Amendment.  Furthermore, Whittington's claim for false imprisonment must be

analyzed under the Fourth Amendment because he has alleged a pretrial deprivation of liberty.

Lastly, Whittington's allegations do not state any claim pertaining to the due process protections

for pretrial detainees which mirror convicted prisoners' rights under the Eighth Amendment.

Therefore, the City's motion to dismiss Whittington's Fourteenth Amendment Due Process

Clause claims is GRANTED with prejudice.

16

(2) *Johnson*

Johnson's Fourteenth Amendment due process claims fail for the same reasons as Whittington's.  Johnson's claims pertaining to excessive force, false arrest and false imprisonment must be analyzed under the Fourth Amendment.  Johnson has not stated any due process claim premised on the rights which mirror those of the Eighth Amendment.  Therefore, the City's motion to dismiss Johnson's Fourteenth Amendment Due Process Clause claims is GRANTED with prejudice.

b.      *Equal Protection Clause*

The Equal Protection Clause of the Fourteenth Amendment is essentially a mandate that all persons similarly situated be treated alike.  *Qutb v. Strauss*, 11 F.3d 488 (5th Cir. 1993) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985)).  Courts conduct an equal protection inquiry only "if the challenged government action classifies or distinguishes between two or more relevant groups."  *Id.*  Different standards of review are applied depending on the right or classification implicated.  If a classification disadvantages a "suspect class" or impinges upon a "fundamental right," the classification is subject to strict scrutiny.  *Id.*  Generally the "rational basis" standard of review is applied otherwise.

To sustain an equal protection claim, a plaintiff must allege that similarly situated individuals were treated differently.  *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000).  A plaintiff must also plead that the acts of the government official in question were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right.  *Id.*  Plaintiffs must allege that defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose.  *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

17

*(1) Whittington*

Whittington's allegations sufficiently state a claim under the Equal Protection Clause. Whittington has alleged that: (1) similarly situated persons were treated differently (Dkt. #34 at 14); (2) acts of a government official were motivated by improper considerations (Dkt. #34 at 14); and (3) Defendants' actions had a discriminary effect and were motivated by a discriminatory purpose (Dkt. #34 at 14). Although these allegations are not specific, they are sufficient to overcome notice pleading requirements. Accordingly, the City's motion to dismiss as to Whittington's equal protection claim is DENIED.

*(2) Johnson*

Johnson's allegations sufficiently state a claim under the Equal Protection Clause for exactly the same reasons that Whittington has stated a claim. Johnson's allegations are based on the same pleadings that apply to Whittington. (Dkt. #34 at 14). Accordingly, the City's motion to dismiss as to Johnson's equal protection claim is DENIED.

*3.      Fifth Amendment*

Plaintiffs have asserted claims based on the Fifth Amendment. However, the Fifth Amendment's Due Process Clause only applies when a constitutional deprivation is caused by a federal actor. *Ling v. City of Garland*, 2006 WL 1816434, *2 (N.D. Tex. 2006). Furthermore, the Fifth Amendment's due process clause does not apply to actions of municipal government. *Morin v. Caire,* 77 F.3d 116, 120 (5th Cir. 1996). None of the remaining provisions of the Fifth Amendment are presently applicable.

*(1) Whittington*

Whittington has not alleged any facts supporting a claim under the Fifth Amendment. Accordingly, the City's motion to dismiss as to Whittington's Fifth Amendment claim is

GRANTED with prejudice.

*(1) Johnson*

Johnson has not alleged any facts supporting a claim under the Fifth Amendment. Accordingly, the City's motion to dismiss as to Johnson's Fifth Amendment claim is GRANTED with prejudice.

3.      *Sixth Amendment*

Whittington and Johnson assert a constitutional violation under the Sixth Amendment.

*(1) Whittington*

Whittington has not provided any basis for any Sixth Amendment claims.  Accordingly, the City's motion to dismiss Whittington's Sixth Amendment claim is GRANTED with prejudice.

*(2) Johnson*

Johnson has not provided any basis for any Sixth Amendment claims.  Accordingly, the City's motion to dismiss Johnson's Sixth Amendment claim is GRANTED with prejudice.

3.      *Eighth Amendment*

Plaintiffs maintain that their § 1983 claims should be analyzed under the Eighth Amendment.  However, the Eighth Amendment's prohibition against cruel and unusual punishment only applies to convicted prisoners.  *Hare v. City of Corinth, MS*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

*(1) Whittington*

Whittington has not alleged that he is a convicted prisoner.  Accordingly, the City's motion to dismiss Whittington's Eighth Amendment claim is GRANTED with prejudice.

*(2) Johnson*

Johnson has not alleged that he is a convicted prisoner.  Accordingly, the City's motion to

dismiss Johnson's Eighth Amendment claim is GRANTED with prejudice.

C.     *State Law Claims*

Plaintiffs have asserted several common law causes of action against the City.  These causes of action include negligence (Dkt. #34 at 9-11), intentional misconduct (Dkt. #34 at 11-13) and intentional infliction of emotional distress (Dkt. #34 at 13).  The City contends that these claims should be dismissed because its governmental immunity has not been waived.

A Texas municipality may not be held liable for Texas common law causes of action unless the Texas Legislature has waived its governmental immunity.  *University of Texas Medical Branch v. York*, 871 S.W.2d 175, 177 (Tex. 1994).  Immunity is only waived for claims brought under the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code §§ 101.001, *et seq*.  *See Lowe v. Texas Tech. University*, 540 S.W.2d 297, 298-99 (Tex. 1976).  In the pertinent part, the TTCA requires State law claims to arise in one of two ways: (1) from the conduct of a governmental unit's employee that involves the operation of a motor-driven vehicle or equipment; or (2) from the condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.  Tex. Civ. Prac. & Rem. Code § 101.021.  The TTCA also prohibits claims for intentional torts, *id*. at § 101.057, and imposes a notice requirement, *id*. at § 101.101.  A claim properly stated as an intentional tort may not be restated as a claim for negligence.  *Lopez-Rodriguez v. City of Levelland, Texas*, 200 Fed.Appx. 272, 275 (2004)(per curiam)(citations omitted).  However, the conduct underlying intentional torts may be a basis for proper claims of negligence.  *Id.* (Citations omitted).

1.     *Intentional Torts*

Plaintiffs' causes of action for intentional misconduct and intentional infliction of emotional distress are intentional torts under Texas law.  *See City of San Antonio v. Dunn*, 796

S.W.2d 258, 261 (Tex. App. -- San Antonio 1990).  Accordingly, the City's motion to dismiss as to these intentional torts is GRANTED with prejudice.

2. *Negligence*

(a) *Whittington*

Whittington's only colorable TTCA negligence claims arise out of his being shot by Deputy Browning's taser.[8]  Deputy Browning is an employee of DeWitt County, not the City of Cuero.   However, Deputy Browning was directed to use his taser on Whittington by Officer McCarthy, who is employed by the City of Cuero.  Therefore, the Court must decide whether Officer McCarthy's orders constitute "use" of the taser under the TTCA.

Texas courts have defined the term "use" as provided in the TTCA.  "Use" has been interpreted to mean "'to put or bring into action or service; to employ for or apply to a given purpose'" *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001).  The TTCA further requires that any conduct causing injury or death must be proximately caused by the use of tangible personal property.  *See* Tex. Civ. Prac. & Rem. Code § 101.021.

After applying these terms, the Court finds that Whittington's allegations sufficiently allege Officer McCarthy's "use" of the taser in question.  By directing Deputy Browning to shoot Whittington with the taser, Officer McCarthy brought the taser into action and service.  Furthermore, Whittington has alleged that a sufficient nexus exists between Officer McCarthy's order to use the taser and Whittington's alleged injuries.

Because the Court finds that it is not beyond doubt that Officer McCarthy "used" the taser, the Court must determine whether Whittington has sufficiently alleged Officer McCarthy's

---

[8] The Court finds that the taser, as alleged, is tangible personal property under Texas Civil Practice and Remedies Code section 101.021.

negligent use.  Whittington's relevant allegations state that Officer McCarthy negligently used unreasonable force in detaining Whittington, negligently used wrongful arrest techniques, and negligently used unreasonable defensive tactics.  (Dkt. #34 at 11).  These allegations are similar to an allegation in another TTCA case where the Fifth Circuit found a proper negligence claim. *Lopez-Rodriguez*, 100 Fed.Appx. at 275 (finding the allegation that "[the defendant] was negligent . . . . "in firing [a gun] at [plaintiff] when it was not safe to do so," among other allegations, was sufficient to state a cause of action for negligence under the TTCA).  In light of this ruling, the Court finds that it should not dismiss Whittington's negligence claim at this stage.[9] If Officer McCarthy's conduct is later found to be solely intentional and not negligent, this claim will properly be dismissed.  *See Id.*  Accordingly, the City's motion to dismiss as to the claim of negligence arising out of Officer McCarthy's use of the taser is DENIED.  The City's motion to dismiss as to all other claims of negligence pertaining to Whittington is GRANTED without prejudice.  The Court grants Whittington leave to amend his complaint within 10 days of the entry of this Order to properly state claims for negligence under the TTCA.

>    *(b) Johnson*

Johnson's negligence claims under the TTCA as to the City fail because they do not meet the TTCA requirements.  Johnson's only colorable TTCA negligence claims involve his being hit on the head with Deputy Edwards' flashlight.[10]  Under Johnson's allegations, Deputy Edwards undeniably used his flashlight when he hit Johnson on the head with it.  However, Deputy

---

[9] The Court also finds that Plaintiffs' allegations of notice are sufficient to prevent dismissal.  Defendants may challenge the evidentiary sufficiency of the notice at the summary judgment stage.

[10]  The Court finds that the flashlight, as alleged, is tangible personal property under Texas Civil Practice and Remedies Code section 101.021.

Edwards is an employee of DeWitt County, not the City of Cuero. Johnson has not alleged that there was any nexus between Deputy Edwards' use of his flashlight and any action by a City of Cuero employee. Furthermore, no City of Cuero employee is alleged to have negligently used the flashlight in question. Accordingly, the City's motion to dismiss Johnson's TTCA negligence claims is GRANTED without prejudice. The Court grants Johnson leave to amend his complaint within 10 days of the entry of this Order to properly state claims for negligence under the TTCA.

> 3.      *State Law Claims as to Officer McCarthy in His Personal Capacity*

The TTCA provides that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). The City contends that any State law claims filed against Officer McCarthy in his personal capacity should be dismissed. The Court finds that Plaintiffs have asserted State law claims against the City, a governmental unit. Therefore, the City's motion to dismiss all State law TTCA claims pertaining to Officer McCarthy is GRANTED with prejudice.

II.     *Motions to Sever*

The City (Dkt. #19-1) and DeWitt County (Dkt #16-1) have moved to sever Whittington's claims and Johnson's claims under Federal Rule of Civil Procedure 21. The City emphasizes that under the operative complaint there are two distinct plaintiffs whose claims are based on two separate sets of facts. Plaintiffs respond by conceding that severance is appropriate. However, Plaintiffs maintain that severance should not be ordered until discovery is substantially completed.

An examination of the Second Amended Complaint reveals that the events underlying Whittington's claims are completely different from the events underlying Johnson's claims.

Therefore, it would be unfair and prejudicial to permit Plaintiffs' claims to be tried together. However, the Court finds that, up to the time of trial, discovery shall be conducted as if Whittington's and Johnson's cases constitute a single action.  Accordingly, the motion to sever is GRANTED.

## CONCLUSION

The Court finds that:

1.   Plaintiffs' complaint sufficiently alleges the requirements for municipal liability.

2.   The motion to dismiss as to Plaintiffs' First Amendment claims is GRANTED without prejudice.

3.   The motion to dismiss as to Plaintiffs' Fourth Amendment excessive force claim is DENIED.

4.   The motion to dismiss as to Plaintiffs' Fourth Amendment improper arrest/false arrest claim is DENIED.

5.   The motion to dismiss as to Plaintiffs' Fourth Amendment unreasonable seizure claim is GRANTED with prejudice.

6.   The motion to dismiss as to Plaintiffs' Fourth Amendment false imprisonment claim is DENIED.

7.   The motion to dismiss as to Plaintiffs' Fourteenth Amendment due process claims is GRANTED with prejudice.

8.   The motion to dismiss as to Plaintiffs' Fourteenth Amendment equal protection claims is DENIED.

9.   The motion to dismiss as to Plaintiffs' Fifth Amendment claims is GRANTED with prejudice.

10.    The motion to dismiss as to Plaintiffs' Sixth Amendment claims is GRANTED with prejudice.

11.    The motion to dismiss as to Plaintiffs' Eighth Amendment claims is GRANTED with prejudice.

12.    The motion to dismiss as to Plaintiffs' intentional tort claims is GRANTED with prejudice.

13.    The motion to dismiss as to Whittington's TTCA negligence claims arising out of Officer McCarthy's use of a taser is DENIED.

14.    The motion to dismiss as to Whittington's remaining TTCA negligence claims is GRANTED without prejudice.

15.    The motion to dismiss as to Johnson's TTCA negligence claims is GRANTED without prejudice.

16.    The motion to dismiss as to Plaintiffs' State law claims against Officer McCarthy is GRANTED with prejudice.

17.    The motions to sever are GRANTED.

It is so ORDERED.

Signed this 28th day of March, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE